**No. 15-30706**

In the United States Court of Appeals
for the Fifth Circuit
_____

EVELYN ALCALA JEANSONNE,
PLAINTIFF-APPELLANT

*v.*

WELLS FARGO BANK, N.A.; GENERATION MORTGAGE
COMPANY,
DEFENDANTS-APPELLEES

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF LOUISIANA NO. 15-1014

_____

**ORIGINAL BRIEF FOR DEFENDANT-APPELLEE
GENERATION MORTGAGE COMPANY**

BY:　　/s/ Kari M. Rollins
　　　　KARI M. ROLLINS
　　　　*Winston & Strawn LLP*
　　　　200 Park Avenue
　　　　New York, NY 10166
　　　　Telephone: (212) 294-670
　　　　Facsimile: (212) 294-4700
　　　　karollins@winston.com

**ORAL ARGUMENT REQUESTED**
**No. 15-30706**

In the United States Court of Appeals
for the Fifth Circuit
_____

EVELYN ALCALA JEANSONNE,
PLAINTIFF-APPELLANT

*v.*

WELLS FARGO BANK, N.A.; GENERATION MORTGAGE
COMPANY,
DEFENDANTS-APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Honorable Court may evaluate possible disqualification or recusal.

1. Evelyn Alcala Jeansonne, *Plaintiff-Appellant*

2. Counsel for Plaintiff:

   a. Joseph M. Bruno

      b.  Daniel A. Meyer

      c.  Bruno & Bruno, LLP

      d.  Mark A. Jeansonne

      e.  Jeansonne Law Firm

3.  Wells Fargo Bank, N.A., *Defendant-Appellee*

4.  Counsel for Defendant Wells Fargo Bank, N.A.

      a.  Kent Andrew Lambert

      b.  Brian Michael Ballay

      c.  Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

5.  Generation Mortgage Company, *Defendant-Appellee*

6.  Guggenheim Partners, LLC, *parent company of Generation Mortgage Company*

7.  Counsel For Defendant Generation Mortgage Company

      a.  Kari M. Rollins

      b.  Zachary L. Sorman

      c.  Winston & Strawn, LLP

      d.  D. Brian Cohn

      e.  The Cohn Law Firm, LLC

8.  Bayou Title, Inc., *Defendant-Appellee*

9.  Counsel for Bayou Title, Inc.

   a. Irl R. Silverstein

   b. Silverstein Law Firm A.P.L.C.

10. The Honorable Jay C. Zainey, *District Court Judge for the U.S. District Court for the Eastern District of Louisiana*

Respectfully Submitted,


BY: /S/ *KARI M. ROLLINS*
KARI M. ROLLINS

*Winston & Strawn LLP*
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
karollins@winston.com
Attorney of Record for Generation
Mortgage Company, *Defendant-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. Rule 28.2.4., Defendant-Appellee Generation Mortgage Company respectfully suggests that oral argument is not likely to assist this Honorable Court in the adjudication of this matter. The issues presented on appeal by Plaintiff-Appellant Evelyn Jeansonne are not complex, and turn on a reading of the plain language of 12 U.S.C. § 1715z-20(j) and a plain reading of the controlling reverse mortgage documents.  The trial court considered each and every issue now raised by the Plaintiff-Appellant and issued well-reasoned opinion that explained clearly and concisely why Plaintiff-Appellant's claims for wrongful foreclosure and breach of contract fail as a matter of law.

However, to the extent this Honorable Court determines oral argument would be helpful, Defendant-Appellee Generation Mortgage reserves its right to participate in such oral argument.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ........................................................ v

Table of Contents .................................................................................... vi

Table of Authorities ............................. **Error! Bookmark not defined.**

Jurisdictional Statement .......................................................................... 1

Statement of the Issues Presented For Review ........................................ 1

Statement of the Case .............................................................................. 2

    I.     Factual History ........................................................... 3
    II.    Procedural History ................................................... 11

Summary of the Argument ..................................................................... 17

Argument ............................................................................................... 20

    I.     12 U.S.C. § 1715z-20(j) Does Not Obligate Generation To Defer Repayment and Foreclosure of the Loan Until After Ms. Jeansonne's Death or Her Sale of the Property ............ 20

    II.    12 U.S.C. § 1715z-20(j) Does Not Create a Private Right of Action. ................................................................................ 30

    III.   The Court Should Affirm that 12 U.S.C. § 1715z-20(j) is Not a Term in the Mortgage. ....................................................... 36

    IV.   The Court Should Affirm that Ms. Jeansonne Waived or Disclaimed Any Ownership Interest in the Property ........... 44

Conclusion ............................................................................................. 47

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Aldi v. Wells Fargo Bank, NA*, No. 3:14-cv-00089-WWE,
  2015 WL 3650297 (D. Conn. Feb. 17, 2015) ........................... 23, 26, 36

*Bombet v. Donovan*, Civil Action No. 13-118-SDD-SCR,
  2015 WL 1276555 (M.D. La. Mar. 19, 2015)................................ 26, 36

*Brown ex rel. Richards v. Brown*,
  239 P.3d 602 (Wash. Ct. App. 2010)..................................................... 35

*Chandler v. Wells Fargo Bank, N.A.*, Case No. 11-03831 SC,
  2014 WL 31315 (N.D. Cal. Jan. 3, 2014)............................................. 42

*Earman v. United States*,
  114 Fed. Cl. 81 (2013) ................................................................... 41, 42

*Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*,
  No. 14 Civ. 8751(ER), 2015 WL 5660945
  (S.D.N.Y Sept. 25, 2015) ............................................................... 23, 26

*Kostopoulos v. Onewest Bank, FSB*,
  60 F. Supp. 3d 804, 806 (E. D. Mich. 2014) .................................. 27, 40

*Lloyds of London v. Transcontinental Gas Pipe Line Corp.*,
  101 F.3d 425 (5th Cir. 1996).................................................................. 39

*Nationstar Mortg. LLC v. Carey*, C.A. No. 9274-MA,
  2014 WL 6735445 (Del. Ch. Nov. 26, 2014) ........................................ 26

*Plunkett v. Castro*, 67 F. Supp. 3d 1
  (D.D.C. 2014) ........................................................................ 26, 30, 35

*Reliant Energy Svcs., Inc. v. Enron Canada Corp.*,
  349 F.3d 816 (5th Cir. 2003).................................................................. 39

*Roberts v. Cameron-Brown Co.*,
  556 F.2d 356 (5th Cir. 1977)................................................................. 33

*Smith v. JPMorgan Chase Bank, N.A.,*
  519 Fed. App'x. 861 (5th Cir. 2013)...............................................41, 42

*Smith v. Rev. Mortg. Solutions, Inc.,* -- So. 3d. --,
  2015 WL 4257632 (Fla. Dist. Ct. App. July 15, 2015)............28, 29, 40

*St. Christopher Assoc. L.P. v. United States,*
  511 F.3d 1376 (Fed. Cir. 2008) .............................................................41

*Texas Eastern Transmission Corp. v. Amerada Hess Corp.,*
  145 F.3d 737 (5th Cir. 1998)..................................................................39

*Till v. Unifirst Fed. Sav. And Loan Ass'n.,*
  653 F.2d 152 (5th Cir. 1981).........................................................32, 33

*Touche Ross & Co. v. Redington,*
  442 U.S. 560 (1979) ........................................................................31, 32

*Transamerica Mortg. Adv., Inc. v. Lewis,*
  444 U.S. 11 (1979) ..........................................................................34, 35

*Welte v. Wells Fargo Bank, N.A.,* No. EDCV 13-00464 JGB (SPx),
  2013 WL 6728889 (C.D. Cal. Dec. 18, 2013) ...........................22, 23, 27

*Wiseman v. First Mariner Bank,* C.A. No. ELH-12-2423,
  2013 WL 5375248 (D. Md. Sept. 23, 2013) .........................................35

## STATUTES

12 U.S.C. § 1715z-20....................................................................... passim

28 U.S.C. § 1291.................................................................................... 1

28 U.S.C. §§ 1332, 1441, 1446, and 1453...........................................1, 12

LA. CIV. CODE ANN. art. 2046 (West 2015)...............................................38

LA. CIV. CODE ANN. art. 2336 (West 2015)..............................................47

## OTHER AUTHORITIES

24 C.F.R. § 206.27.......................................................................5, 29. 44

viii

24 C.F.R. § 206.3 .................................................................. 44

24 C.F.R. § 206.33 ................................................................ 43

24 C.F.R. § 206.103 ................................................................ 6

24 C.F.R. § 206.125(d) ........................................................... 11

Fed. R. Civ. P. 12(b)(6) ....................................................... 2, 3

# JURISDICTIONAL STATEMENT

The Plaintiff-Appellant, Ms. Evelyn Alcala Jeansonne, filed the instant suit in the Orleans Civil District Court, Parish of Orleans, for the State of Louisiana.  (ROA.17.)  The Petition was removed to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  (ROA.6.)  The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  On July 14, 2015, the District Court entered a final judgment, dismissing this suit in its entirety.  (ROA.362.)  In light of the Notice of Appeal filed by the Plaintiff-Appellant (ROA.363-64), this Honorable Court has original appellate jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Ms. Jeansonne incorrectly asserts that there is one issue presented for review: that the District Court improperly dismissed the instant action because "Generation Mortgage Company violated HUD regulations binding upon it . . . and that the HUD regulations, specifically 12 U.S.C. § 1715z-20(j), comprise an implied term of the Home Equity Conversion Mortgage Contract."  (Jeansonne Opening

Brief (hereinafter, "Jeansonne Br.") at 1.)   In reality, Ms. Jeansonne

raises several issues that must each be considered separately:

1. Whether lenders, like Generation Mortgage Company, who have had their reverse mortgage loans insured by U.S. Department of Housing and Urban Development have an affirmative duty to comply with the mandate of 12. U.S.C. § 1715z-20(j).

2. Whether 12 U.S.C. § 1715z-20(j) confers a private right of action on Ms. Jeansonne to enforce an alleged violation of 12 U.S.C. § 1715z-20(j) by Generation Mortgage Company.

3. Whether 12 U.S.C. § 1715z-20(j) constitutes an implied term of Home Equity Conversion Mortgage that is subsequently insured by the U.S. Department of Housing and Urban Development.

4. Whether a person who has no ownership interest in a property and only signed a mortgage to disclaim or waive any potential rights can be considered a party to that contract.

## STATEMENT OF THE CASE

This appeal is taken from the District Court's holding that Ms.

Jeansonne failed to state a claim upon which relief could be granted

against Generation Mortgage Company ("Generation").   Accordingly,

the Court dismissed the instant lawsuit, with prejudice, pursuant to

Fed. R. Civ. P. 12(b)(6).   Since these arguments are unsupported by

either well-plead facts or law, the Court should affirm the District

Court's decision to dismiss Ms. Jeansonne's Petition with prejudice.

## I.    Factual History

In October 2014, Ms. Jeansonne filed a Petition in the Orleans Civil District Court for the Parish of Orleans in the State of Louisiana. (ROA.17-24.)  The Petition demanded damages from Generation, Wells Fargo Bank, N.A. ("Wells Fargo"), and Bayou Title, Inc., on behalf of herself and a proposed class of plaintiffs.  (*Id.*) According to the Petition, these damages were caused by "breach of contract, fraud, and an implicit claim for wrongful foreclosure."  (Jeansonne Br. at 2.)

Although the Petition is vague, the essence of Ms. Jeansonne's pleading is that she was defrauded by Wells Fargo and Bayou Title in 2010.  (ROA.18-19.)  This alleged fraud occurred when Ms. Jeansonne was induced by Wells Fargo and Bayou Title to execute an Inter Vivos Donation, conveying her undivided, half interest in the home she shared with her husband to her husband—thus making Mr. Jeansonne the sole owner of the property.  This Donation was executed in connection with a Home Equity Conversion Mortgage (hereinafter "HECM") between Wells Fargo and Mr. Jeansonne, as sole owner of the home.  (*Id.*)

In 2012, Mr. Jeansonne sought to refinance the Wells Fargo HECM with Generation.  Although Mr. Jeansonne was the sole owner

of the property at the time of the transaction with Generation, Ms. Jeansonne's pleading alleges that Generation owed her a duty to detect the fraud she alleges was perpetrated by Wells Fargo and Bayou. (ROA.19-20.) According to Ms. Jeansonne, Generation "had inadequate or faulty protocol, or should have had valid protocol, to determine whether or why a non-borrowing spouse suddenly and without consideration donated all of her interest in the property subject to the mortgage." (ROA.20.) As a result of Generation's alleged failure to satisfy this alleged duty, Ms. Jeansonne claims that Generation wrongfully foreclosed on the property,[1] causing her damages. This is the sole allegation of wrongdoing that was plead against Generation.

### A.    Background on the Home Equity Conversion Mortgage Loan Program

The loan at issue in this case is an HECM, a special type of mortgage that is insured by the Federal Housing Administration (hereinafter, "FHA"). The HECM program is administered pursuant to

---

[1] Generation sent a letter to Ms. Jeansonne notifying her that the HECM had come due, and that she must either pay the amount owed or the property would be seized. Generation did not, however, "essentially evict" Ms. Jeansonne from her home, and only put locks on the property when it appeared to have been abandoned voluntarily. Indeed, even the foreclosure proceedings have been stayed at this time, and upon information and belief, Ms. Jeansonne is presently living in the home. Thus, Ms. Jeansonne's claim for wrongful foreclosure are based on a foreclosure that actually did not happen. These facts were conveniently omitted from the Petition and Ms. Jeansonne's Brief, thus they are not subject to review in this appeal.

the authority granted to U.S. Department of Housing and Urban Development (hereinafter, "HUD") by the National Housing Act (hereinafter, "NHA"), 12 U.S.C. § 1701 *et seq.* Section 1715z-20 grants the authority to HUD to create a mortgage insurance program that provides elderly homeowners with the opportunity to convert "a portion of accumulated home equity into liquid assets" by taking out a mortgage against that equity—commonly referred to as a "reverse mortgage." 12 U.S.C. § 1715z-20(a).

Unlike a traditional mortgage, an HECM does not require monthly payments. Instead, the principal and accrued interest need not be repaid until the borrower dies or the home is no longer the principal residence of the borrower. 24 C.F.R. § 206.27(c)(1); *FHA Reverse Mortgage: Convert Your Equity Into Income* (FHA), *available at* https://www.fha.com/fha_reverse (last accessed November 9, 2015). When one of these "triggering events" occurs, the lender ("mortgagee") is entitled to repayment—typically effected by the sale of the home. If the sale price exceeds the amount due on the loan, the proceeds flow to the borrower. HECMs are "non-recourse" loans, meaning that if the sale price is less than the amount due on the loan, the lender cannot

hold the borrower personally liable.  Rather, the lender is compensated through the FHA insurance.  *See* 24 C.F.R. § 206.103.

Pursuant to its grant of authority to create the HECM program, HUD has established certain requirements for a borrower to be eligible for an HECM, including: (1) the youngest borrower must be at least 62 years old; (2) the borrower(s) owns the property outright or has a significant amount of equity; (3) the borrower(s) uses the property as his or her principal residence; and (4) the borrower(s) participates in a consumer information session from a HUD-approved counselor.  *See FHA Reverse Mortgages (HECMs) for Seniors* (HUD) *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/hecm/hecmabou (last accessed November 9, 2015).

### B.    The Jeansonne HECM

In 1988, Ms. Jeansonne and her husband, Avrel Jeansonne, jointly purchased property located at 20225 San Rocco Street in New Orleans, Louisiana.  (ROA.18.)  In March 2010 Mr. Jeansonne became ill and the Jeansonnes applied for an HECM from Wells Fargo, presumptively to help pay for medical expenses.  (*Id.*)  As a part of this transaction, Ms. Jeansonne executed an "Act of Donation Inter Vivos," which irrevocably

transferred her undivided, half interest in the home to her husband. (ROA.18; ROA.75-76.)  After the Donation was executed, Mr. Jeansonne became the sole owner of the property.  Without the Donation, the Jeansonnes would not have qualified for the HECM program as Ms. Jeansonne was only 59 at the time and thus did not meet the eligibility criteria set by HUD.  While other types of home equity conversion loans exist, the HECM program was specifically created to incentivize lenders to provide reverse mortgages to elderly homeowners under more favorable terms than they could otherwise obtain.  12 U.S.C. § 1715z-20(a).  HECMs have more favorable terms because they are insured by HUD in case the sale price of the home is insufficient to satisfy the amount owed under the loan.

As required to obtain insurance under the HECM program, Ms. Jeansonne and her husband both received counseling regarding the risks involved in the HECM.  (ROA.140.)  Ms. Jeansonne also signed a separate "Notice to Non Borrowing Spouse or Resident," which required her to acknowledge her understanding that, in the event Mr. Jeansonne predeceased her, any HECM loan that her husband had taken out as the borrowing party would become immediately due and payable and

could force the voluntary or involuntary sale of the mortgaged property.

(ROA.137.)  In relevant part, the Notice stated:

> If you are a non-borrowing spouse or resident and plan to reside in the above referenced property, you should be aware of the following circumstances: if the borrowing spouse or resident predeceases you or otherwise no longer occupies the property as their primary residence, the reverse mortgage will become due and payable. Repayment of the existing mortgage is typically made through the proceeds of the sale of the property or through a refinance into a new mortgage.

(ROA.137.)  Both Mr. and Ms. Jeansonne signed this notice.

In May 2012, Mr. Jeansonne sought to refinance his HECM through Generation.  (ROA.19 at ¶ 5.)   The transaction was consummated May 11, 2012 by the execution of four separate documents: (1) the Fixed Rate Note Home Equity Conversion Closed End ("the Note")  (ROA.188); the Home Equity Conversion Loan Agreement Closed End ("the Agreement") (ROA.203); and two Fixed Rate Home Equity Conversion Mortgages (collectively, "the Security Instruments"), one in favor of Generation ("the First Instrument") and the other in favor of HUD ("the Second Instrument") (ROA.211-20; ROA.222-31).

The contracts were executed between "the Borrower" and Generation and/or HUD, and each contract defines Mr. Jeansonne as

8

the sole Borrower, as he alone held the ownership interest in the property.  (ROA.188 at ¶ 1 (defining "Borrower" to mean "each person signing at the end of this Note" and only Mr. Jeansonne's signature appears); ROA.203-209 (same); ROA.211 ("This MORTGAGE ("Security Instrument") is given on May 11, 2012 ("Date")  . . . by Avrel D. Jeansonne ("Borrower"), a person(s) of the full majority and a resident(s) of ORLEANS Parish, Louisiana."); ROA.222 (same).)

Ms. Jeansonne did not sign the Note or the Loan Agreement. (ROA.190; ROA.209.)  Although Ms. Jeansonne did sign the two mortgages, neither identifies her as a Borrower.  Instead, Ms. Jeansonne's signature appears directly above text stating:

> **Evelyn A. Jeansonne** is joining in the execution of this Security Instrument solely for the purpose of consenting to the encumbrance of, and waiving any homestead and/or community property rights in, the described Property and is not assuming any personal liability for payment of the debt secured hereby.

(ROA.218; ROA.229.)  In other words, Ms. Jeansonne only signed this agreement to waive any rights she *may* have had and to disclaim any liability under the mortgage.

The Security Instruments also contain provisions stating that:

- **9(a)(i) Grounds for Acceleration of Debt**. Lender may require payment-in-full of all sums secured by this Security Instrument if A borrower dies and the Property is not the principal residence of at least one surviving Borrower

(ROA.213; ROA.224.)  Since Mr. Jeansonne was the sole borrower, the terms of the HECM provide that upon his death, Generation may demand payment-in-full of the amounts owed.  If such payment is not provided, the Security Instruments provide that

- **20 Foreclosure Procedure**.  If Lender requires immediate payment-in-full under Paragraph 9, Lender may invoke the power of sale and any other remedies provided in this Paragraph 20, including, but not limited to, reasonable attorney's fees and costs of title evidence. . . .

(ROA.216; ROA.227.)

Also included with the paperwork for the Note, the Agreement and the Security Instruments were an application for credit and a HUD Settlement Statement describing funds to be distributed.  While Ms. Jeansonne signed both of these document as a "co-borrower," neither document purports to be a binding contract.  Instead, these were form documents which were to indicate that the Jeansonnes had received the relevant documents and the required disclosures.   (ROA.191-95.)

Further, since Ms. Jeansonne was still only 61 at the time, she was still not an eligible HECM mortgagor.

Unfortunately, Mr. Jeansonne passed away on May 16, 2014. (ROA.251.)   Under the terms of the Security Instruments, this sad event triggered Generation's right to demand repayment of the loan, a right which could expire if the a mortgagee delayed. *See* 24 C.F.R. § 2016.125(d) (requiring the mortgagee to exercise reasonable diligence in prosecuting foreclosure proceedings).   Accordingly, Generation exercised its rights under the Security Instruments and sent a letter requesting payment of the amount owed under the loan.   When Ms. Jeansonne failed to make payments for three months, Generation initiated, but never completed, foreclosure proceedings. (ROA.19.)

According to the Petition, however, Ms. Jeansonne claims that she was forced to leave her home after it was seized by Generation.   Despite the fact that no such seizure occurred, it is a pleaded allegation in the Petition.

## II.      Procedural History

On April 1, 2015, Wells Fargo removed this case to the United States District Court for the Eastern District of Louisiana pursuant to

28 U.S.C. §§ 1332, 1441, 1446, and 1453.  (ROA.6.)  All three defendants filed motions to dismiss, all three motions were granted, with prejudice, on July 8, 2015.  Ms. Jeansonne only appeals the District Court's Order as it pertains to Generation.  (Jeansonne Br. at 1.)

In granting Generation's Motion to Dismiss, the District Court first observed that because Ms. Jeansonne's claim seeks only damages—not a challenge related to the foreclosure proceedings—then, "as originally pleaded, Plaintiff's claim against Generation is implicitly one for wrongful foreclosure." (ROA.351.)  And, since Generation played no part in the alleged fraud giving rise to the inter vivos donation, the District Court cautioned that "Plaintiff has a difficult row to hoe in order to recover damages from Generation based on the foreclosure." (*Id.*)  Indeed, because Ms. Jeansonne did not and does not challenge the validity  of the HECM agreement, her claim for damages against Generation arises solely from her allegation that Generation had an "inadequate or faulty protocol" which caused Generation to fail to investigate "why a non-borrowing spouse suddenly and without consideration donated all of her interest in the property." (ROA.19-20 at ¶ 7.)

After consideration of Ms. Jeansonne's argument that Generation owed her a duty, the District Court found that there was no duty owed by Generation to Ms. Jeansonne, and even if there was, Ms. Jeansonne failed to state a plausible claim that such a duty was breached. (ROA.353 ("[a]ny claim against Generation grounded in tort also fails because under the facts alleged (even as expanded via Plaintiff's affidavit), Generation owed no duty to Plaintiff to investigate, confirm, or question the inter vivos donation that she had executed in 2010 in conjunction with the Wells Fargo Transaction.").) Under Louisiana law, "there is nothing implicitly suspicious or noteworthy about a spouse-to-spouse donation" that would give rise to a duty for Generation to investigate on Ms. Jeansonne's behalf. (*Id*.) Indeed, the Wells Fargo HECM was not a donation to a total stranger, but rather "to her spouse who was seeking to borrow money under a program that was available to older equity owners for which she did not qualify." (*Id*.)

Further supporting this finding, the District Court found that any breach of contract claim against Generation was "ill-conceived" because Ms. Jeansonne was not a party to the reverse mortgage with Generation. (ROA.352.) Even drawing all reasonable inferences in Ms.

Jeansonne's favor, the mortgage agreements clearly identify the sole Borrower as Mr. Jeansonne, who was also the sole owner of the property. By contrast, Ms. Jeansonne only signed as a "Non-Borrowing Spouse" for the sole purpose of waving or disclaiming any rights she may have had in the property. (*Id*.) Given these clear definitions, the District Court found that "even if Plaintiff is considered a party to the reverse mortgages, she can point to no provision in those contracts that Generation actually breached." (*Id*.)

Finally, the District Court considered arguments that Ms. Jeansonne raised for the first time in her opposition to Generation's Motion to Dismiss—that 12 U.S.C. § 1715z-20(j) precluded Generation from foreclosing on the property so long as the non-borrowing spouse continued to occupy the property. (ROA.354.) The District Court held that although § 1715z-20(j) was intended to protect non-borrowing spouses, that protection "had been eviscerated prior to August 4, 2014 by an invalid HUD regulation" and "does not extend to invalidating an otherwise valid mortgage agreement entered into between a lender and an HECM-qualified borrowing spouse." (*Id*.) Rather, the District Court found that § 1715z-20(j) "is a Congressional directive to the Department

of Housing and Urban Development (HUD) to <u>not</u> insure reverse mortgages that fail to protect a non-borrowing spouse who continues to occupy the property at the time of the borrowing spouse's death." (*Id.* (emphasis in original).) And, after conducting its own investigation into relevant case law, the court found that "in no case, either cited to the Court by Plaintiff or that this Court could find through its own research, has a court invalidated an otherwise valid contractual agreement between a lender and a borrower, much less held the foreclosing lender potentially liable for damages, based on the fact that HUD was willing to insure a loan secured by a reverse mortgage that did not comply with § 1715z-20(j). In fact, the cases recognize the opposite." (ROA.355.)

Based on these conclusions, the District Court found that Ms. Jeansonne failed to state a claim on which relief could be granted, either in the Petition or in the new arguments raised during briefing of the motions to dismiss. Thus, any attempt to amend the pleadings would be futile, and the District Court dismissed the Complaint with prejudice.

Ms. Jeansonne filed a Notice of Appeal on August 10, 2015 (ROA.363), and a brief on October 26, 2015.  In her appellate brief, Ms. Jeansonne doubles-down on the arguments raised in her opposition to Generation's Motion to Dismiss, arguments that were considered and flatly rejected by the District Court.  Indeed, Ms. Jeansonne asserts that (1) Generation assumed a duty under 12 U.S.C. §1715z-20(j) by accepting insurance from HUD; and (2) 12 U.S.C. § 1715z-20(j) is an implied term of the HECM contract, making Ms. Jeansonne a party to the contract.  Thus, by attempting to foreclose on the property, Ms. Jeansonne alleges that Generation breached a duty owed to her under the statute and breached its obligations to her under the HECM contract.  Ms. Jeansonne also appears to contest the District Court's findings regarding the legal effect and/or significance of her signatures on the documents related to the HECM and her eligibility as a borrower under § 1715z-20.

Ms. Jeansonne does not, however, appeal the District Court's finding that Generation did not owe her a duty to investigate the alleged fraud, nor does she appeal her claims against Wells Fargo or Bayou Title, i.e. the alleged fraud against her.  In essence, this appeal

does not challenge the motion to dismiss, but rather the denial of leave to amend the pleadings to include these new claims.

## SUMMARY OF THE ARGUMENT

The decision of the District Court should be affirmed in its entirety. This thorough and well-reasoned opinion, which included independent research into the viability of Ms. Jeansonne's arguments, concluded that Ms. Jeansonne cannot state a plausible claim under which relief can be granted.

Ms. Jeansonne's arguments are based on two fundamentally flawed presumptions: (1) that 12 U.S.C. § 1715z-20(j) imposes a duty on lenders that apply for insurance under the HECM program; and (2) that any HECM that is insured by HUD must, by implication, comply with and adopt the provisions of 12 U.S.C. § 1715z-20(j) as implied terms.

12 U.S.C. § 1715z-20 plainly states its purpose and methods—to grant the authority to HUD to develop a mortgage insurance program for the benefit of elderly homeowners. The specific provisions within Section 1715z-20, and the regulations promulgated by HUD in conjunction with the HECM program, provide a framework under which a lender can offer such a mortgage loan and reasonably expect to have

17

that loan insured by HUD. In other words, the statute encourages lenders to provide HECMs under certain terms *if* that lender wants HUD's insurance. The statute does not, however, mandate that such terms are required or, in their absence, would render a reverse mortgage loan invalid or in violation of Section 1715z-20(j).

Ms. Jeansonne attempts to flip Section 1715z-20(j) on its head, arguing that because a mortgage was insured by HUD, it therefore must have complied with all of the attendant rules and regulations and has a duty to uphold them. This puts the cart before the horse. Indeed, Section 1715z-20(j) proscribes the conduct of HUD only, and does not regulate the conduct of private parties.

Moreover, even if Ms. Jeansonne were correct that Section 1715z-20(j) imposes obligations on a private lender by virtue of accepting HUD insurance, the mere existence of such a duty does not mean that Ms. Jeansonne has the right to enforce it. To the contrary, the legislative intent behind Section 1715z-20(j) demonstrates that the HECM program was to be designed, regulated, and enforced by HUD—not private citizens.

18

Again assuming, *arguendo*, that Ms. Jeansonne's interpretation of Section 1715z-20 is correct that a duty is owed to her and that individuals have the right to enforce such claims, there is still no factual or legal basis to impute that contractual term into the HECM contract. Ms. Jeansonne argues that because Generation intended to seek insurance from HUD, the provisions of Section 1715z-20(j) are implicitly included in the HECM agreement. This contradicts the plain meaning of the statute, the contract, and even HUD regulations regarding the HECM program. Instead of following the plain meaning of well-defined contractual terms or unambiguous statutory language, Ms. Jeansonne asks that this Court deem her to be a party to the HECM Agreement that she signed as a "non-borrowing spouse" and for the sole purpose of waiving any property rights she may have had at the time.

The frivolity of Ms. Jeansonne's arguments is further demonstrated by her apparent challenges to the legal effect of her signatures on certain relevant documents. According to Ms. Jeansonne, the "verbiage" that expressly waived any and all rights she may have had to the property was insignificant in comparison to the joint credit

application she signed as a "co-borrower" and the HUD Settlement Statement—a receipt showing the disbursement of funds pursuant to the HECM agreement. Similarly, despite the fact that she expressly waived her community property rights, Ms. Jeansonne inexplicably claims that she was a third-party beneficiary to the HECM agreement because the proceeds of the loan were community property.

These inherent contradictions and unfounded interpretations of facts and law do not give rise to a claim under which relief could be granted or identify any plausible scenario under which the Petition could be amended to state such a claim. As a result, this Honorable Court should affirm the District Court's decision to dismiss this lawsuit with prejudice.

## ARGUMENT

### I. 12 U.S.C. § 1715z-20(j) Does <u>Not</u> Obligate Generation To Defer Repayment and Foreclosure of the Loan Until After Ms. Jeansonne's Death or Her Sale of the Property

In her ever-evolving attempt to craft a viable claim for wrongful foreclosure, Ms. Jeansonne argues that, in exchange for HUD's insurance of its reverse mortgage loans, Generation has agreed implicitly to comply with the proscription contained in 12 U.S.C. §

1715z-20(j) and has assumed, therefore, an affirmative duty to defer foreclosure of its reverse mortgage loans until after the deaths of both the homeowner-borrower and the non-borrowing spouse. (Jeansonne Br. at 10.)  The inferential leaps made here by Ms. Jeansonne, however, do not and cannot alter or circumvent the plain language and legislative intent of Section 1715z-20(j).  As discussed in greater detail below, as a matter of law, Section 1715z-20(j) does not impose a duty—either express or implied—on any lender or entity other than HUD.  For that reason, Ms. Jeansonne cannot state a claim for wrongful foreclosure, wrongful eviction, or some other tort premised upon some alleged violation of Section 1715z-20(j) by Generation, and the District Court's dismissal of such claims with prejudice should be affirmed.

A.    **12 U.S.C. §1715z-20(j) proscribes the conduct of HUD only, not private parties or lenders like Generation.**

The plain language of Section 1715z-20(j) makes clear that its mandate applies ***only*** to the Secretary of HUD:

> ***The Secretary may not insure*** a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For

purposes of this subsection, the term "homeowner" includes the spouse of a homeowner. Section 1647 (b) of title 15 and any implementing regulations issued by the Board of Governors of the Federal Reserve System shall not apply to a mortgage insured under this section.

12 U.S.C. § 1715z-20(j) (West 2015) (emphasis added). As the District Court rightfully concluded, Section 1715z-20(j) reflects "a Congressional directive **to the Department of Housing and Urban Development (HUD)** to <u>not</u> insure reverse mortgages that fail to protect a non-borrowing spouse who continues to occupy the property at the time of the borrowing spouse's death." (ROA.354. (emphasis added).)

The express mandate of Section 1715z-20(j) applies to the Secretary of HUD, and the Secretary of HUD alone. Indeed, nothing in the plain language of Section 1715z-20(j) or its legislative history suggests that any individual or entity other than the Secretary of HUD bears any obligation or duty under Section 1715z-20(j). *See Welte v. Wells Fargo Bank, N.A.*, No. EDCV-13-00463-JGB (SPx), 2013 WL 6728889, at *8 (C.D. Cal. Dec. 18, 2013) ("However, under the plain language of [12 U.S.C. §1715z-20(j)], **only the Secretary of HUD has an obligation within this Sub-Section**.") (emphasis added).

22

Because Section 1715z-20(j) proscribes the conduct of HUD only, courts have dismissed claims brought against lenders and other private parties for allegedly violating the Section 1715z-20(j) mandate. *See Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*, No. 14 Civ. 8751(ER), 2015 WL 5660945, at *1 (S.D.N.Y Sept. 25, 2015) (dismissing claim for violation of HECM statute and its impending regulations); *Aldi v. Wells Fargo Bank, NA*, No. 3:14-cv-00089-WWE, 2015 WL 3650297, at *7 (D. Conn. Feb. 17, 2015) (dismissing, among others, plaintiffs' claim for declaratory judgment requiring Wells Fargo to defer satisfaction of the reverse mortgage loan obligations according to Section 1715z-20(j)); *Welte*, 2013 WL 6728889, at *8 (finding that Wells Fargo cannot violate Section 1715z-20(j) and dismissing plaintiff's UCL claim against Wells Fargo premised thereon). For the same reason, Ms. Jeansonne's claims against Generation for violation of Section 1715z-20(j) should be dismissed with prejudice.

**B.    Accepting HUD's insurance of its reverse mortgage loans does not impliedly obligate Generation to defer repayment of the loan obligations under 12 U.S.C. § 1715z-20(j).**

Clearly recognizing that the plain language of Section 1715z-20(j) applies only to HUD, Ms. Jeansonne argues that Generation, *as an*

*HUD-insured HECM lender*, implicitly assumed an affirmative duty to defer repayment of all reverse mortgage loan obligations until the deaths of both the homeowner-borrower and non-borrowing spouse.(Jeansonne Br. at 10.)   In other words, by accepting HUD's insurance of its reverse mortgage loans, Ms. Jeansonne claims that Generation implicitly assumed a duty and obligated itself to comply with the mandate set forth in Section 1715z-20(j) and defer repayment of its reverse mortgage loans until Ms. Jeansonne's death or sale of the property.  (*Id.*)  Ms. Jeansonne's argument, however, is contradicted by the plain language in the statute, legislative intent, and corresponding case law.

Nothing in the plain language of Section 1715z-20(j) suggests that by accepting insurance on an reverse mortgage loan, a lender or mortgagee, like Generation, assumes any duty or obligation to defer repayment under Section 1715z-20(j).  If Congress intended to impose a duty on lenders or mortgagees as a result of accepting HUD's insurance, it was fully capable of drafting such a provision.  For example, in Section 1717z-20(n), Congress expressly forbids lenders or mortgagees from participating in or associating with parties that provide other

financial or insurance services or, in the alternative, expressly requires that lenders or mortgagees appropriately segregates those services so as to avoid the incentive to sell other products to elderly homeowners. *See* 12 U.S.C. § 1715z-20(n). And, there is no evidence from which to infer that Congress intended to impose such a duty on lenders or mortgagees like Generation.

The stated purpose of the reverse mortgage loan program is to "meet the special needs of elderly homeowners," needs which are to be met by "***encourag[ing] and increas[ing] the involvement*** of mortgagees [or lenders] and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners." 12 U.S.C. § 1715z-20(a)(2) (emphasis added). To this end—to encourage and increase participation by lenders—Section 1715z-20(j) establishes a framework under which ***HUD may confer*** a benefit on a lender (*i.e.,* insurance of HECMs), not a set of restrictions that apply to or duties that are owed by the lender if HUD insures the reverse mortgage loan. Indeed, a lender is free and legally entitled to offer a reverse mortgage under different terms. A lender would be well within its rights (and would not violate Section 1715z-20(j)) to pursue

full repayment, and foreclosure in the event of non-payment, of its reverse mortgage loan even if the non-borrowing, surviving spouse still resides in the subject property. Further still, mortgage loan agreements containing such a provision would not run afoul of Section 1715z-20(j). *See Nationstar Mortg. LLC v. Carey*, C.A. No. 9274-MA, 2014 WL 6735445, at *3 (Del. Ch. Nov. 26, 2014) ("Nothing in the federal case cited by Mrs. Carey or in Mortgage Letter 2014–07 precludes Nationstar from seeking foreclosure against Mrs. Carey, a non-borrower surviving spouse."). But such a lender runs the risk that HUD may decide not to insure the reverse mortgage loan. The statute provides a carrot, not a stick. And, as such, there is no plausible basis to infer the duty alleged by Ms. Jeansonne.

Tellingly, no court has ever found the existence of the duty claimed by Ms. Jeansonne. *See Estate of Leventhal ex rel.*, 2015 WL 5660945, at *1; *Bombet v. Donovan*, C.A. No. 13-1178-SDD-SCR, 2015 WL 1276555 at *5 (M.D. La. Mar. 19, 2015); *Aldi*, 2015 WL 3650297, at *7; *Nationstar Mortg.*, 2014 WL 6735445, at *3; *Plunkett v. Castro*, 67 F. Supp. 3d 1, 18 (D.D.C. 2014); *Welte*, 2013 WL 6728889, at *8.

And the cases cited by Ms. Jeansonne do not reach a contrary conclusion. In *Kostopoulos v. Onewest Bank, FSB*, 60 F. Supp. 3d 804, 806 (E. D. Mich. 2014), the district court denied the lender's motion to dismiss because the plaintiff had at least raised a plausible claim that she was an actual borrower. *Id.* at 810.  In *Kostopoulos*, the couple owned the property as tenants by the entirety, plaintiff was a qualified borrower at the time of the reverse mortgage, and plaintiff signed the mortgage in her capacity as borrower. *Id.*  Only the husband signed the note, however. *Id.*  Because plaintiff did not sign the note, the lender claimed it was entitled to foreclose even though the plaintiff (surviving spouse) still occupied the house. *Id.*  The court found that the signature on the mortgage was controlling as the lender would have no right to foreclose on the property without it. *See id.*  In *Kostopoulos*, the plaintiff's claim was premised upon her status as an actual borrower, and the duty not to foreclose was contractually based. *See id.*  As such, the court in *Kostopoulos* did not consider whether a lender assumes a duty under Section 1715z-20(j) by accepting HUD insurance of the reverse mortgage. *See id.*

Similarly, the other case cited by Ms. Jeansonne, *Smith v. Rev. Mortg. Solutions, Inc.*, did not involve an alleged breach of duty under Section 1715z-20. -- So. 3d. --, No. 3D13-2261, 2015 WL 4257632, *3 (Fla. Dist. Ct. App. July 15, 2015). Instead, *Smith* addresses the scenario in which the spouse was a joint owner of the property and signed the mortgage as a borrower. *Id.* Indeed, in *Smith*, the court noted the distinction, stating that:

> It appears that, as part of the reverse mortgage origination process, some reverse mortgage originators are alleged to have advised one elderly spouse to execute a quit-claim deed, deeding their jointly owned property to the other spouse, so that a single "Borrower" would appear on all paperwork. No such allegations have been made in this case. **In fact, as mentioned earlier, the verified complaint specifically alleges that Mrs. Smith owns the subject property, and Mrs. Smith executed the subject mortgage. We need not, and do not, reach the issues implicated in those cases where the nature of the surviving spouse's ownership interest in the subject property is in dispute**.

*Smith*, 2015 WL 4257632, at *5 n.10 (emphasis added and internal citations omitted).

The difference is significant. At the time, HUD regulations allowed a mortgage to become due and payable upon the death of one

28

spouse so long as that spouse owns the entire interest in the property.
24 C.F.R. § 206.27(c)(1). This regulation provided that:

> (c) Date the mortgage comes due and payable.
>
> (1) The mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor, or a mortgagor conveys all or his or her title in the property and no other mortgagor retains title to the property. For purposes of the preceding sentence, a mortgagor retains title in the property if the mortgagor continues to hold title to any part of the property in fee simple, as a leasehold interest as set forth in § 206.45(a), or as a life estate.

24 C.F.R. § 206.27(c) (*held invalid by Bennett v. Donovan*, 4 F. Supp. 3d 5, 14-15 (D.D.C. 2013)). Since Ms. Jeansonne donated all of her interest in the property to her husband, and did not sign either the note or the mortgage as a borrower, no meaningful comparison can be made to either *Kostopoulus* or *Smith*.

Moreover, 24 C.F.R. § 206.27(c)(1) demonstrates that even if the issue were properly before the Court, and even if the Court found there was a duty owed, Generation could not have breached that duty, as the HECM was written in a manner authorized by the regulation. Subsequent litigation regarding the validity of this regulation has

29

demonstrated that HUD improperly acted in contravention of Section 1715z-20(j), but "once those loans were consummated, an independent contractual relationship was created between the borrowing spouses and the third-party mortgagees." *Plunkett*, 67 F. Supp. 3d at 18. In response, HUD has crafted potential remedies for those adversely affected by this provision, but HUD cannot and does not require lenders to comply with this new remedy. *Id*. at 18-19.

It is therefore clear that Section 1715z-20 does not impose a duty on Generation, and Ms. Jeansonne cannot state a cause of action on which relief can be granted.

## II.    12 U.S.C. § 1715z-20(j) Does Not Create a Private Right of Action.

Even if the Court found that Generation owes Ms. Jeansonne a duty under Section 1715z-20(j), the law is clear that Section 1715z-20 does not create a private right of action for any alleged breach by Generation of that supposed duty. For this reason, any attempt by Ms. Jeansonne to craft a claim against Generation for wrongful foreclosure, wrongful eviction, or any other tort premised upon a breach of its alleged duty under Section 1715z-20(j) will fail as a matter of law. And,

thus, the District Court's dismissal with prejudice of Ms. Jeansonne's claims based on Section 1715z-20(j) was proper and should be affirmed.

A.   **The preventative nature of Section 1715z-20(j) evidences that Congress did not intend to create a private right of action to enforce Section 1715z-20(j).**

Whether a private right of action exists is a question of statutory construction. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). When legislation is preventative in nature, it is not likely that Congress intended a private remedy. *Touche Ross*, 442 U.S. at 571 n.11. In *Touche Ross*, the Supreme Court held that the Congressional intent behind a record-keeping provision of the Securities Act was preventative, not punitive. *Id*. Since the purpose of the statute was to prevent brokers from becoming insolvent, and that purpose was achieved by record-keeping that would enable regulators to intervene, it did not follow that a failure to prevent insolvency gave rise to a cause of action for damages. *See id*. Providing tools for regulators to achieve Congressional goals is a distinctly different legislative purpose than providing recompense when such goals are not met. *See id*. Thus, the Court refused to find an implied private right of action. The same reasoning holds true in this case. The plain language of Section 1715z-

20(j) demonstrates it is preventative, not punitive.  Like in *Touche Ross*, as Ms. Jeansonne admits, the purpose of Section 1715z-20(j) is "to 'safeguard and prevent displacement of homeowner [and homeowner's spouse].'" (Jeansonne Br. at 10 (*quoting* 12 U.S.C. § 1715z-20(j)).) Congress gave HUD the tools to achieve that purpose by directing HUD not to ensure reverse mortgage loans that did not comply with Section 1715z-20(j), and did not provide recompense in the event a reverse mortgage with different terms was executed.  Like in *Touche Ross*, Congress did not intend to permit an implied private of right under Section 1715z-20.

Similarly, when Congress empowers an agency to create and enforce an administrative scheme, it is "strong evidence that Congress intended the administrative remedy to be exclusive." *Till v. Unifirst Fed. Sav. And Loan Ass'n.*, 653 F.2d 152, 160 (5th Cir. 1981). "Congress, by directing the financial supervisory agencies to adopt regulations to implement the [statutory requirements], has entrusted enforcement of these requirements to those agencies." *Id.* "Indeed, it is clear under the maxim expressio unius est exclusio alterius that a pervasive remedial scheme provided by Congress is an indication that

there was no intent to provide an additional private remedy." *Id.* (citations omitted). Such is the case here. Pursuant to the National Housing Act (NHA), Congress authorized HUD to approve and supervise programs, like the HECM program, and to adopt regulations to administer and enforce the Congressionally authorized programs. An implied cause of action under the NHA will discourage private investment and interfere with HUD's authority to approve and supervise programs. *See Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977).

> **B.    The fact that Congress expressed an intent to protect non-borrowing surviving spouses under Section 1715z-20(j) does not create a private right of action in favor of those surviving spouses**

Ms. Jeansonne contends that "Congress has expressed a clear intent to protect the surviving spouses of HECM borrowers from eviction or foreclosure prior to their death." (Jeansonne Br. at 7.) In this one limited regard, Ms. Jeansonne is correct: Congress did intend to protect the surviving spouses of HECM borrowers. However, as discussed above, the responsibility for ensuring those surviving spouses are protected lies exclusively with HUD. And for purposes of evaluating whether a private right of action exists, it is not enough that Congress

intended to impose an obligation to protect a certain class of individuals. *See Transamerica Mortg. Adv., Inc. v. Lewis*, 444 U.S. 11, 24 (1979).

Instead, the critical question regarding intent is "whether Congress intended additionally that these [protections] would be enforced through private litigation." *Transamerica Mortg.*, 444 U.S. at 18. For example, in *Transamerica*, the Supreme Court found a private remedy to exist when a statute declared certain contracts to be void, since "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of the consideration paid." *Id.* In other words, in order to accomplish the goals of the statute, individual litigation would be necessary. *See id.* But, "[w]e view quite differently, however, the respondent's claim for damages and other monetary relief." *Id.* Thus, even if a statute proscribes certain conduct, it does not necessarily create a cause of action for damages. *Id.*

A private right of action for damages caused by an allegedly wrongful foreclosure is plainly not necessary to effectuate the purposes of Section 1715z-20. *See Transamerica Mortg. Advisors, Inc.*, 444 U.S.

at 15-16.    Rather, this type of suit is the opposite of that in
*Transamerica* where the full scope of remedies conferred by the statute
could only be vindicated through private action.    Under Section 1715z-
20, allegations such as those brought by Ms. Jeansonne would not be
necessary but for conflicting regulations promulgated by HUD.
*Plunkett*, 67 F. Supp. 3d at 18.    In response to litigation against HUD
concerning 24 C.F.R. § 206.27(c)(1), HUD has changed its practices and
even adopted options by which it could protect non-borrowing spouses
that may have been adversely impacted.    *Id*.    Thus, Congress gave HUD
the authority to solve problems arising from the HECM program, and
no private right of action is necessary.

And courts specifically construing Section 1715z-20(j) have found
that it creates no express or implied private right of action for damages.
*See, e.g.*, *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 607 (Wash. Ct.
App. 2010) ("We do not address [plaintiff's] section 1715z-20 claims
because section 1715z-20 creates no express or implied private right of
action for damages."); *Wiseman v. First Mariner Bank*, Civil Action No.
ELH-12-2423, 2013 WL 5375248, at *26 (D. Md. Sept. 23, 2013)
(dismissing Plaintiff's claim for violation of 12 U.S.C. § 1715z-20

because the statute did not authorize a private right of action); *Bombet*, 2015 WL 1276555, at *5 ("[W]hile HUD may have violated 12 U.S.C. §1715z-20(j) when it insured Mr. Bombet's reverse mortgage, this did not render the mortgage contract between Bombet and the [mortgagee] legally unenforceable or invalid."); *Aldi*, 2015 WL 3650297, at *7 ("[T]he Court agrees with defendants that 12 U.S.C. § 1715z–20 governs HUD's insurance of reverse mortgages, not the independent contractual relationship between mortgagors and mortgagees.").

Because no private right of action exists, Ms. Jeansonne's claims under 12 U.S.C. § 1715z-20(j) fail as a matter of law.  And, as the District Court rightfully concluded, "any attempt to assert a new claim [under 12 U.S.C. § 1715z-20(j)]  against Generation would be futile." (ROA.355) For that reason, the Court should affirm the District Court's dismissal with prejudice of Ms. Jeansonne's claim for wrongful foreclosure.

## III.     12 U.S.C. § 1715z-20(j) is Not a Term in the Mortgage.

The Court should also affirm the District Court's ruling that Ms. Jeansonne failed to state a claim for breach of a valid contract to which Ms. Jeansonne was a party.

The District Court held that:

> **That Plaintiff is not identified as a "Borrower" on the contract is significant** because Section 9 of the contract, entitled Grounds for Acceleration of Debt, allows the Lender to accelerate the debt when the Borrower dies and the property is not the principal residence of at least one surviving Borrower. (*Id.* at 3 ¶ 9(a)(i)). Again, the mortgages identify only Avrel D. Jeansonne as Borrower, which means that under the express terms of the mortgages the Lender had the right to accelerate the debt when Mr. Jeansonne died, this notwithstanding that the Borrower's spouse continued to occupy the home. Thus, even if Plaintiff is considered a party to the reverse mortgages, she can point to no provision in those contracts that Generation actually breached.

(ROA.352 (emphasis added).)   Although Ms. Jeansonne argued in her opposition to Generation's motion to dismiss that Section 1715z-20(j) "creates a mortgage condition that must be read into the mortgage agreement itself," the District Court found instead that:

> [I]n no case, either cited to the Court by Plaintiff or that this Court could find through its own research, has a court invalidated an otherwise valid contractual agreement between a lender and a borrower, much less held the foreclosing lender potentially liable for damages, based on the fact that HUD was willing to insure a loan secured by a reverse mortgage that did not comply with § 1715z-20(j).   In fact, the cases recognize the opposite.

(ROA.355.)

On appeal, Ms. Jeansonne rehashes this argument, claiming that she is a party to the contract with Generation because "[b]y its own express terms, the Generation HECM is governed by federal law, which includes the HUD regulations set forth in 12 U.S.C. § 1715z-20 *et seq*." (Jeansonne Br. at 9.)   This argument is baseless, and cannot redefine the express and agreed-upon terms of the HECM contract.

### A.    Ms. Jeansonne cannot redefine the unambiguous terms of HECM contract.

First, "[w]hen the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046 (West 2015).   In other words, when a contract is not ambiguous, the Fifth Circuit has held that it "has no authority to reach beyond the four corners of the document."   *Texas East Trans. Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998).

"A contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d

425, 429 (5th Cir. 1996). A contract is not ambiguous, however, "where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Texas East*, 145 F.3d at 741. Even if the provisions are susceptible to different meanings, they should be interpreted "to avoid neutralizing or ignoring any of them or treating them as surplusage and to preserve the validity of the contract." *Id*. The same general principles apply under Federal contract law. *See Reliant Energy Svcs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 821-22 (5th Cir. 2003).

In each and every contract that affects Generation's right to demand repayment and foreclose on the property, the term "Borrower" is precisely defined and completely unambiguous. Indeed, the contracts either expressly define Avrel D. Jeansonne as the sole borrower, or state that the complete list of Borrowers includes only those signing at the end of a document, where only Avrel Jeansonne's signature appears. (ROA.188, 190, 203, 209, 211, 222.) There is thus no reason to look beyond the four corners of the document to Section 1715z-20(j) to ascertain the meaning of the term "Borrower."

The cases cited by Ms. Jeansonne do not reach a contrary conclusion. In *Kostopoulos* and *Smith*, the plaintiffs actually signed the mortgage as a borrower and had an actual ownership interest in the property. *Kostopoulos*, 60 F. Supp. 3d at 806; *Smith,* -- So. 3d. --, 2015 WL 4257632, at *3. Thus, those plaintiffs could state a plausible claim that foreclosure against them would be wrongful. Ms. Jeansonne did not sign the mortgage as a borrower and has no such ownership interest. Thus, there is no basis to infer that she is or was ever intended to be a party to the agreement. Accordingly, she can bring no plausible claim for breach.

### B.   12 U.S.C. § 1715z-20(j) cannot be incorporated into the HECM contract.

Ms. Jeansonne further argues that she is a "Borrower" under the HECM contracts because 12 U.S.C. § 1715z-20(j) is implicitly incorporated into the contract language. In support of this argument, Ms. Jeansonne argues that the "Immediate Payment-In-Full" provision "attempts to track the requirements set forth in 12 U.S.C. § 1715z-20(j), but fails because Generation's HECM contract uses the term 'Borrower', [sic] instead of 'Homeowner.'" (Jeansonne Br. at 6.) According to Jeansonne, this is a failure by Generation, and should be remedied by

recrafting that provision to read "homeowner," as defined by Section 1715z-20(j), in place of Borrower.  (*Id.*)

"Federal statutes and regulations can form the basis of a breach-of-contract claim if the parties ***expressly*** incorporate them into their contract." *Smith v. JPMorgan Chase Bank, N.A.,* 519 Fed. App'x. 861, 864 (5th Cir. 2013) (emphasis added); *see also St. Christopher Assoc. L.P. v. U.S.*, 511 F.3d 1376, 1380-81 (Fed. Cir. 2008).  For extrinsic material to be incorporated into a contract by reference, the contract:

> [M]ust explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).

*Earman v. United States*, 114 Fed. Cl. 81, 103 (2013) (quoting *Northrop Grumman Information Tech., Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008)).

Indeed, "the wholesale incorporation of regulations into a contract would allow the contracting party to 'choose among a multitude of regulations as to which he could claim a breach—and thus a wholly new ground of obligation would be summarily created by mere implication."

*St. Christopher Assocs.*,   511 F.3d at 1384 (quoting *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988)).   Thus, when a contract makes a general reference to a rule or regulation those regulations should not be imputed into the contract.   *Id.* (finding that HUD regulations were not included in a Regulatory Agreement by implication); *see also Chandler v. Wells Fargo Bank, N.A.*, Case No. 11-03831 SC, 2014 WL 31315, at *5 (N.D. Cal. January 3, 2014).

Ms. Jeansonne's argument that 12 U.S.C. § 1715z-20 should be incorporated into the contract is based on the general statement that "[t]his Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located."  This general choice of law provision does not expressly incorporate 12 U.S.C. § 1715z-20, nor does it imply that it should be incorporated.  *Earman*, 114 Fed. Cl. at 104 ("Nothing in plaintiff's contract explicitly provides for the incorporation of the CSP statute. Rather, plaintiff's contract merely provides that it " 'shall be carried out in accordance with all applicable Federal statutes and regulations.'"); *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. App'x. 861, 864 (5th Cir. 2013) (finding that a statute was not incorporated into a deed of trust when "the only provision in

the deed of trust that references federal law does so in general terms, noting that the deed 'shall be governed by federal law and the law of the jurisdiction in which the Property is located.'")

There is no evidence that the parties intended to include the provisions of Section 1715z-20(j) into the HECM contract, nor is there evidence that Generation intended to, and "failed," to track the provisions of 12 U.S.C. § 1715z-20(j).  Instead, the HECM agreement clearly defines the terms of the agreement in accordance with the provisions of the HUD regulations that would have been required at the time.  *See* 24 C.F.R. § 206.27(a) (West 2015) (stating that "[t]he mortgage shall be in a form meeting the requirements of the Secretary").

### C.     Section 1715z-20(j) has no impact on the terms of the mortgage contract

Section 1715z-20(j) has ***no impact on the terms and conditions*** between the mortgagor and mortgagee.  *See Bombet v. Donovan*, C.A. No. 13-1178-SDD-SCR, 2015 WL 1276555, at *5 (M.D. La. Mar. 19, 2015).  In *Bombet*, in a factual situation analogous to that here, the Middle District of Louisiana found that "while HUD may have violated 12 U.S.C. § 1715z-20(j) when it insured Mr. Bombet's reverse mortgage,

this did not render the mortgage contract between Bombet and the [mortgagee] legally unenforceable or invalid." *Id.*; *see also Plunkett v. Castro*, 2014 WL 4243384, at *13 (D.D.C. Aug. 28, 2014) ("once those loans were consummated, an independent contractual relationship was created between the borrowing spouses and the third-party mortgagees.")  To that end, Section 1715z-20(j) ***does not*** modify Generation's mortgage agreement with Mr. Jeansonne such that it should be read into the contract to impose a duty on Generation under Section 1715z-20(j) to defer repayment of the loan until after Ms. Jeansonne's death or otherwise define "Borrower" as "Homeowner".  As a matter of law, therefore, Plaintiff can assert no cause of action against Generation for breach of contract under 12 U.S.C. § 1715z-20(j).

## IV.  Ms. Jeansonne Waived or Disclaimed Any Ownership Interest in the Property.

Ms. Jeansonne does not appeal the District Court's finding that the inter vivos donation was facially valid, or otherwise attempt to reverse that transaction.  Instead, in addition to her reinterpretation of the contract according to 12 U.S.C. § 1715z-20(j), Ms. Jeansonne suggests that she has standing to assert breach of contract either as an actual borrower, like Mr. Jeansonne, or as a third-party beneficiary to

the contract, claiming that the proceeds of the mortgage would be community property. (Jeansonne Br. at 9, 20.) This argument is without merit.

First, Ms. Jeansonne appears to contest the legal effect of her signatures on the reverse mortgage agreements and security instruments. (Jeansonne Br. at 3). According to Ms. Jeansonne, she and her husband applied jointly for an "FHA Refinance HECM" with Generation, and "they both signed as joint borrowers in three places." (*Id.*) The signatures to which Ms. Jeansonne refers were affixed to the HUD Settlement Statement and Credit Application, neither of which purport to be a contract nor provide the basis for Generation's right to demand repayment and foreclose on the property. Rather, these documents are forms which a homeowner must sign to memorialize that they received the document and/or verify that certain disclosures were made. (ROA.188-209.) Ms. Jeansonne's signature on these documents does not render her a borrower under the legally operative loan documents, and cannot confer on Ms. Jeansonne status as a party to either agreement.

Ms. Jeansonne admits she signed the "HECM contract," but attempts to downplay the significance of her signature on those documents. (Jeansonne Br. at 3).  The plain language shows, however, that Ms. Jeansonne signed the reverse mortgage contract for the ***sole purpose*** of disclaiming of any community property rights or homestead rights that she may have still had in the property.  (ROA.218; ROA.229.)

Again Ms. Jeansonne attempts to create a controversy where none exists by downplaying her express waiver in favor of her signatures that attest to the accuracy of a credit application and receipt of the HUD Settlement Statement. In Louisiana, however, a person who signs a document is presumed to know its contents and cannot avoid the obligations incurred by later contending that she did not read the document or that it was not explained to her or that she did not understand it (ROA.359 (*citing Jeansonne v. Attorney's Liab. Assur. Soc.*, 891 So. 2d 721, 726 (La. App. 4th Cir. 2004); *Tweedel v. Brasseaux*, 433 So. 2d 133 (La. 1983)).)

Even without the express waiver, Ms. Jeansonne has no community property rights.  The Jeansonnes voluntarily partitioned

community property by transferring the joint ownership to the sole possession of Mr. Jeansonne.  Indeed, it was through this partitioning of community property that Mr. Jeansonne was able to obtain the loan as the sole borrower—given that Ms. Jeansonne was under 62, and thus not qualified under the HECM program.  In light of this transfer, the property became the separate property of Mr. Jeansonne, and the proceeds of the loan were his sole property.  LA. CIV. CODE ANN. art. 2336 (West 2015).  Ms. Jeansonne cannot now stake a claim to them, thereby precluding any claim she was a third-party beneficiary of the reverse mortgage loans.

## CONCLUSION

For the reasons stated herein, the District Court's dismissal with prejudice of Plaintiff-Appellant Jeansonne's claims against Defendant-Appellee Generation Mortgage Company should be affirmed.

Respectfully submitted,

DATED: December 28, 2015          /s/ Kari M. Rollins
                                  Kari M. Rollins

WINSTON & STRAWN
LLP

200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
karollins@winston.com

*Counsel for Defendant-
Appellee Generation
Mortgage Company*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25, I hereby certify that a true and correct copy of the foregoing Response Brief of the Defendant-Appellee Generation Mortgage Company, has been filed via CM/ECF with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit.

All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

DATED: December 28, 2015

/s/ *Kari M. Rollins*
Kari M. Rollins

*Counsel for Defendant-Appellee Generation Mortgage Company*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as  it contains 9,313 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as it has been prepared in a 14-point, proportionally spaced typeface, Century Schoolbook, by using Microsoft Word 2010.

DATED: December 28, 2015                    /s/ *Kari M. Rollins*
                                            Kari M. Rollins

                                            *Counsel for Defendant-
                                            Appellee Generation
                                            Mortgage Company*